IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MARY J. CUMMINGS                                                                                          PLAINTIFF

VERSUS                                                           CIVIL ACTION NO. 1:06cv667WJG-JMR

UNION SECURITY INSURANCE
COMPANY and DEFENDANTS AAA,
BBB, CCC                                                                                                   DEFENDANTS

MEMORANDUM OPINION

THIS CAUSE is before the Court on motion of the Defendant, Union Security Insurance Company [Union Security], for summary judgment [32-1] on Plaintiff's claims for damages in this case. Also pending before the Court is the motion for summary judgment [35-1] filed by the Plaintiff, Mary J. Cummings. The Court has duly considered the record in this action, in addition to the briefs of counsel, and being otherwise fully advised in the premises, concludes as follows:

Standard of Review

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . ." FED. R. CIV. P. 56(c). In determining whether there are any genuine issues of material fact, this Court must first turn to the applicable law to discern what factual issues are, indeed, material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Fields v. City of S. Houston, Tex.,* 922 F.2d 1183, 1187 (5th Cir. 1991). Then, the Court must examine the evidence of the type listed in Rule 56(c) to detect the existence or non-existence of a material issue.

*Fields,* 922 F.2d at 1187. Further, "summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Statement of Facts

Cummings filed suit to recover benefits under a group health insurance plan issued by Fortis Benefits Insurance Company, now known as Union Security. (Am. Compl., p. 1.) She asserts that she was issued an insurance policy on September 1, 2003, by Union Security. (*Id*., p. 2.) After undergoing bilateral reduction mammoplasty on July 8, 2003, she filed a claim for coverage of the procedure. (*Id*., pp. 2-3.) The claim was denied and Cummings asserts that in doing so, Union Security violated its obligation under the Employment Retirement Income Security Act [ERISA], and its state law contractual obligations. (*Id.,* p. 3.) She contends that the act of denying her claim constitutes bad faith and should subject Union Security to liability for punitive damages. (*Id*., p. 4.)

Union Security maintains that Cummings' surgery was not covered under the policy and that her appeal of the decision did not provide information allowing for a different determination. (Ct. R., Doc. 34, p. 2; Doc. 33-7, p. 60.) Cummings suffered from a condition known as hydradenitis, an inflammation of the sweat glands resulting in skin lesions. (*Id*.) She also had shoulder and neck pain. (*Id*.) Union Security contends that payment for the removal of the skin lesions was covered under the policy it issued, but asserts that the claim for the bilateral reduction mammoplasty was denied because it was a non-covered cosmetic procedure. (*Id*.)

Cummings was treated by John H. Miller, M.D., a plastic surgeon. (Ct. R., Doc. 33-3, p. 61.) Dr. Miller wrote Union Security seeking predetermination of coverage for the procedure on

Cummings on May 22, 2003.  (Ct. R., Doc. 33-6, p. 62.)  Dr. Miller provided that Cummings presented to him for a consultation for pain she had in her shoulders, neck and breasts.  (*Id*.)  Cummings had recently had an infected area on her left breast incised to drain area, however, her symptoms did not improve after this treatment.  (*Id*.)

Dr. Miller diagnosed Cummings with a wound to her left breast consistent with hydradenitis, macromastia, neck and shoulder pain.  (Ct. R., Doc. 33-3, p. 61.)  Dr. Miller proposed a bilateral breast reduction to the right breast, a left breast reduction, an excision of the skin lesion on the left breast and a closure of the resulting defect.  (*Id*.)  The letter seeking preapproval for the procedure was dated May 22, 2003.  (Ct. R., Doc. 33-6, p. 62.)

A registered nurse, identified as Momberg, performed a clinical review of the predetermination request and found that Cummings body mass index [BMI] indicated that Cummings was obese.  (Ct. R., Doc. 33-6, p. 74.)  Momberg opined that obesity is frequently associated with similar symptoms, such as back and neck symptoms as those Cummings experienced.  (*Id*.)  Momberg stated that Cummings did not show a documented six-month history of back, neck or shoulder pain or failure of six-months conservative therapy prior to a recommended surgery.  (*Id*.)  Momberg found that an examination by a qualified provider should be undertaken for other causes and treatment for Cummings symptoms.  (*Id*.)  Momberg concluded that the proposed treatment was cosmetic and referred the matter to a Union Security medical advisor for review.  (*Id*.)

Dr. Heidenreich, a medical advisor with Union Security, reviewed Dr. Miller's recommendations concerning Cummings and the relevant policy language.  (*Id*.)  Dr. Heidenreich

concluded that the treatment of the hydradenitis was medically necessary but that a bilateral breast reduction was not indicated as part of the treatment. (*Id*.)

Union Security sent a letter to Cummings on June 5, 2003, with a copy to Dr. Miller, advising of its decision that the bilateral reduction mammoplasty was cosmetic and not indicated as treatment for the left breast hydradenitis. (Ct. R., Doc. 33-6, p. 68.) Cummings was informed that she had a right to appeal the decision. (*Id*.)

Dr. Miller sent a letter of appeal to Union Security on June 14, 2003, stating that Cummings had two medical conditions, hydradenitis and macromastia. (*Id*., p. 67. ) Dr. Miller opined that the breast reduction procedure was not cosmetic but rather, a reconstructive procedure to reduce the weight of [Cummings] breasts to alleviate her symptoms. (*Id*.) Cummings also sent a letter of appeal to Union Security in which she indicated that she consulted with Dr. Miller after visiting five different doctors for her problem regarding the infection in her left breast. (Ct. R., Doc. 33-7, p. 8.) Cummings provides that she was treated with antibiotics for nine months, and a prior unsuccessful surgery. (*Id*.) She contends that the physician that performed the initial surgery, Dr. Hopkins, advised her to consult with a plastic surgeon to remove part of the infected breast. (*Id*.) She contends that the reduction in both breasts was necessary to prevent further surgeries in the area related to infections. (*Id*.)

Dr. Miller also sent a letter clarifying the diagnostic codes in the case. (Ct. R., Doc. 33-7, p. 9.) Nurse Kuzinar, a registered nurse employed with Union Security, reviewed the appeal. (Ct. R., Doc. 33-6, p. 75.) She, in turn, referred the appeal to Dr. Brumblay, a medical advisor with Union Security. (*Id*.)

Dr. Brumblay reviewed the appeal and concluded that the initial decision should be upheld. (*Id*.) Dr. Brumblay noted Cummings BMI, no estimate of the quantity of tissue to be removed, and the lack of documentation for medical management of a condition attributed to breast size. (*Id*.) He opined that it was medically appropriate to surgically treat the hydradenitis. (*Id*.)

Union Security informed Cummings that coverage for the excision of a benign lesion including margins (procedure code 11406) and the repair of complex trunk (procedure codes 13101 and 1302) would be considered. (Ct. R., Doc. 33-6, pp. 70-1.) The reduction mammoplasty was cosmetic treatment and applicable policy language was quoted. (*Id*.)

A second level grievance was also denied because the policy criteria for breast reduction surgery was not fulfilled in Cummings' case as there was no documentation that her symptoms were resistant to conservative treatment. (Ct. R., Doc. 33-8, p. 51.) Cummings was informed that the bilateral reduction procedure would not be covered under the insurance policy. (Ct. R., Doc. 33-8, p. 30.) Cosmetic services are defined as "[a] procedure, medication, or treatment primarily designed to improve appearance, self-esteem or body image and/or relieve or prevent social, emotional or psychological distress." (Ct. R., Doc. 32-6, p. 35.)

Under the term "Covered Medical Services" the policy provides that reconstructive surgery is covered if:

> Required because of an illness . . . or anomaly resulting in a functional defect and surgery which is incidental or follows surgery resulting from illness or injury of the involved part including but not limited to reconstructive surgery following medically necessary removal of all or part of a diseased breast and surgical reconstruction of the non-diseased breast to achieve symmetry.

(Ct. R., Doc. 32-5, p. 54.)

According to Union Security, several medical reviews indicated that breast reduction mammoplasty was not a medically accepted treatment for Cummings' back and neck pain and hydradenitis.  (Ct. R., Doc. 34, p. 14.)  The determination that the procedure was not covered under the policy was reasonable, according to Union Security.  (*Id*.)  The policy provides that coverage is not available for "cosmetic services and reconstructive surgery except as stated in the Covered Medical Services section."  (Ct. R., Doc. 32-6, p. 11.)

Cummings contends in her motion for summary judgment that she meets criteria set by the American Society of Plastic Surgeons which qualifies a reduction mammoplasty as reconstructive surgery and medically necessary, despite Union Security's assertions to the contrary.  (Ct. R., Doc. 36, p. 3.)

## Discussion

Where a benefit plan grants discretion to interpret plan terms to the administrator or its designee, abuse of discretion is the proper standard of review.  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Gosselink v. American Tele. & Tel., Inc.,* 272 F.3d 722, 726 (5th Cir. 2001).  The policy provides that authority, responsibility, and discretion to determine all questions regarding eligibility for coverage and benefit adjudications under the policy, and interpretation and construing the terms and provisions of the policy, is delegated to Union Security.  (Ct. R., Doc. 32-6, p. 31.)

Analysis of the abuse of discretion standard involves a two-step process.  *See Vercher v. Alexander & Alexander Inc.,* 379 F.3d 222, 227 (5th Cir. 2004).  The Court must first determine whether the administrator's plan interpretation is legally correct.  If the administrator's interpretation is legally sound, further analysis is unnecessary because no abuse of discretion

could have occurred.  *Chacko v. Sabre, Inc.,* 473 F.3d 604, 610 (5th Cir. 2006).  If, however, it becomes apparent that the administrator did not give the plan the legally correct interpretation, the Court must then determine whether the administrator's decision was an abuse of discretion.  *Chacko,* 473 F.3d at 610.

To determine the legally correct interpretation of the policy, the Court must consider the following elements:  (1) whether a uniform construction of the [plan] has been given by the administrator; (2) whether the interpretation is fair and reasonable; and (3) whether unanticipated costs will result from a different interpretation of the policy.  *Lain v. UNUM Life Ins. Co. of Am.,* 279 F.3d 337, 344 (5th Cir. 2002).  There is no evidence in this case that Union Security failed to give the policy a uniform construction, therefore, the Court will consider the next two factors in its analysis.  *Atteberry v. Memorial-Hermann Healthcare Sys*., 405 F.3d 344, 349 (5th Cir. 2005).

Union Security determined that the procedure was a cosmetic service under the policy. (Ct. R., Doc. 33-6, pp. 68-71.)  Cummings contends that her entire procedure was medically necessary and not a cosmetic service.  (Ct. R., Doc. 33-7, pp. 56-7.)  A review by the Court of the factual determination of the procedure is under the abuse of discretion standard.  *See Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc*., 168 F.3d 211, 213 (5th Cir. 1999).  The Court must determine if the plan administrator acted arbitrarily or capriciously.  *Meditrust*, 168 F.3d at 214. "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'"  *Meditrust*, 168 F.3d at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich*., 97 F.3d 822, 828 (5th Cir. 1996)).

Cummings asserts that Dr. Miller opined that her mammoplasty was medically necessary. ERISA does not require, however, that administrators give special deference to the opinions of

treating physicians and does not impose a heightened burden of explanation on an administrator who rejects a treating physician's opinion. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). Union Security based its decision to deny coverage for Cummings' mammoplasty on substantial evidence in the administrative record, including a finding that Cummings' BMI was over 30 and that there was no available evidence of a prior conservative treatment of her back and neck pain to alleviate her medical condition without resorting to surgery. The Court finds that Union Security did not abuse its discretion in relying on the medical opinions provided by the physicians, other than Dr. Miller, who reviewed Cummings case. *Vercher*, 379 F.3d at 232-3. The Court further concludes that Union Security's motion for summary judgment should be granted, and that Cummings' motion for summary judgment should be denied.

## Conclusion

Pursuant to the foregoing, the Court finds that Union Security's motion for summary judgment [32-1] should be granted, and that the Plaintiff's motion for summary judgment [35-1] should be denied. A separate order in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue this date. Each party shall bear their respective costs associated with these motions.

THIS the 11th day of February, 2008.

                                                  *Walter J. Gex III*
                                    UNITED STATES SENIOR DISTRICT JUDGE